IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 07-00245-01-CR-W-ODS |
| | ) |
| RONALD ELMQUIST, | ) |
| | ) |
| Defendant. | ) |

<u>ORDER AND OPINION OVERRULING DEFENDANT'S OBJECTIONS TO THE
SUPERSEDING REPORT AND RECOMMENDATION, ADOPTING THE
SUPERSEDING REPORT AND RECOMMENDATION AS THE ORDER OF THE
COURT, AND DENYING DEFENDANT'S MOTIONS TO SUPPRESS</u>

Defendant has been indicted on one count of receiving child pornography and one count of possessing child pornography. Subsequently, he filed (1) a motion to suppress evidence and (2) a motion to suppress statements. Following a hearing, a Magistrate Judge (the Honorable John T. Maughmer) issued a Superseding Report and Recommendation, recommending that the motions be denied. Defendant filed timely objections.

The Record consists of the parties' filings, a transcript of the hearing before Judge Maughmer, and evidence submitted during that hearing. Included in that evidence is a video of the October 31, 2006, interrogation of Defendant conducted by officers from the North Kansas City Police Department. The Court has reviewed the evidence de novo (including the video) and hereby adopts the Superseding Report and Recommendation ("the Report") in its entirety as the Order of the Court. The Report is thorough and requires little additional commentary beyond that necessary to address certain issues raised in Defendant's objections.

## I. BACKGROUND

In summary, the Court finds Defendant was the CEO of QualServ Corporation and, in connection with that position possessed and used a laptop computer that belonged to the company. On or about July 11, 2006, Defendant gave the computer to Brandon Cox, a computer systems analyst at QualServ, reported the presence of spyware, and asked Cox to attend to the problem. As part of this process, Cox was required to copy portions of Defendant's hard drive to a partitioned area of his own hard drive. While performing the tests and operations necessary to clean and optimize the hard drive, Cox found computer images that he believed constituted child pornography. Cox called his father for advice, and his father advised that he was going to call the police. Cox then made two copies of the hard drive on CDs and returned the computer and hard drive to Defendant. Meanwhile, Cox's father contacted the North Kansas City Police, and Detective Dan Justus contacted Cox and asked him to come to the police station to make a statement. Arrangements were made for Cox to come in later that week; Detective Justus did not ask Cox any questions about the status of the files or whether they had been copied, nor did he direct Cox to take any further action with respect to Defendant's computer.

Cox then discussed the matter with his supervisor, Dan Dvorak. Dvorak discussed the matter with QualServ's CFO, and together they called the company's chairman. Following a further conversation with the company's legal counsel (which included a discussion of the fact that the police were already aware of the situation), it was decided (by the company chairman) that the images should be preserved for law enforcement. At the same time, Defendant continued to experience problems with his computer, and Cox deemed it necessary to replace the hard drive. The twin purposes of repairing the computer and preserving the images dovetailed, and resulted in the replacement of the hard drive.

Cox went to the North Kansas City Police Department on July 13 as scheduled and spoke with Detective Justus. Detective Justus eventually applied for a search warrant, which was issued by a Clay County Circuit Court judge. The warrant

authorized the seizure and examination of the Defendant's hard drive, the copy residing on Cox's hard drive, and the CDs Cox prepared. It also allowed law enforcement to examine practically everything stored on those devices. The items were analyzed by a forensics lab; images consisting of child pornography were found, as was evidence about the use of various AOL screen names. A grand jury subpoena was issued to AOL, which uncovered links between the use of the screen names and the acquisition of child pornography.

On the afternoon of October 31, 2006, Defendant was stopped while he was leaving work and asked if he would "come for an interview at the station." Tr. at 78. Detective Justus testified the stop was made based on "probable cause to believe that Mr. Elmquist was possessing child pornography and we were going to place him on a 24-hour hold. . . . The end result is he probably wouldn't have been free to leave." Tr. at 79. Defendant was not handcuffed and his keys were not taken from him; in fact, they can be seen in Defendant's possession during the subsequent interview. Defendant also retained possession of his Blackberry. He was transported to the police station and questioned; the questioning started at approximately 2:30 p.m. and lasted approximately three hours. At the beginning, Defendant was read his *Miranda* rights and he signed a waiver of those rights. Defendant has since pointed to four discrete occasions he believes he requested an attorney. The statements appear[1] below:

*Occasion Number One – 4:53:53*

Defendant: I'd like to see that evidence so I can comment on it, and I think that's only fair, and —

Detective: I think you may be seeing that evidence in court.

Defendant: Well . . . I don't want to be – I don't want it to go that way, but at the same time I know what happened to me and I'm a little naive about the full legalities of this thing and I think I've

---

[1] A transcript of the conversation was not provided to the Court. What is set forth may not be 100% accurate, but any variations between what is written and what can be gleaned from the recording are minor.

3

Case 4:07-cr-00245-BCW   Document 47   Filed 08/18/08   Page 3 of 9

been a pretty good Joe in sitting here without any counsel which I dare say I could have at any time I wanted to –

Detective: Exactly. You bet.

Defendant: – because I believe what I am saying is honestly the truth, officer, and that is what happened, and it was without any intent etcetera.

*Occasion Number Two – 4:57:37*

Defendant: What do I need to tell you to, and — and — If I may just ask a question, and I told this gentleman I've tried to be very cooperative here. Am I doing myself a disservice not knowing the law and the facts against that by not having counsel here and being advised because I'm just taking what little knowledge I know and responding as candidly as I can to your questions. I'm really trying to be a good citizen and a good guy here.

Detective: And on the law enforcement side, that's why we read you your rights telling you you have the right to that. We can't tell you "hey, go get one," we can't tell you not to get one. We can't recommend you get one, we can't –

Defendant: OK, the reason I didn't was that I wanted to be real upfront with you and honest with you. And I'm not here trying to deny anything more than what I did.

*Occasion Number Three – 5:20:49*

Defendant: I'm very knowledgeable about running companies etcetera, but I'm not knowledgeable in how to play a game when it comes to the legal side rather than to cooperate. It's all I know. But at the same time, and please respect what I'm about to say. I need for my own benefit somebody that's supporting my end of this, to say, "Ron, you know, tell me the facts you told them, and the facts that are on the table, and I'll give you good counsel to say your very best recourse is, you compromised yourself in downloading those, whatever the reason, and we feel very good the reason is exactly what you believe and it was not the intent to do that because I could have times fifty if that was my intent with the

4

availability on the internet, not my intent, however the better course here is to do the following and this is what we recommend." If that is what I have to do . . . I want to do what's best for me. But at this juncture I'm having a real tough time getting my head around, beyond my own personal private life, of being on AOL and downloading photographs, of which I've done thousands, I'm sitting here now under investigation of a felony of downloading two hundred pictures which . . . .

*Occasion Number Four – 5:36:23*

Defendant: If an attorney says "Ron, what you did – is what it is, and the interpretation is going to be the following in all likelihood – and God I hope that's not the case. But we have to go this route which makes all the sense in the world, at that juncture, I clearly cooperate with anybody and everybody admitting the fact that I downloaded these things with the clear proviso there was not I think I downloaded that I knew was in that attachment was what it was before I downloaded it. But at the end of the day that is the conclusion, then I will cooperate to the nth degree, I truly, truly, truly will. Where I'm perplexed is, why wouldn't I go down that route to get that counsel so he could tell me "Ron, that is the right decision, what they recommended is clearly for the following circumstances, I'm going to read you the law, bingo, that's what it is and it's verbatim what they said. So, let's get in there and work with this the best way we can and then try to rebuild all that this means to you and to your life by the fact that you did download those things." Am I just off-base by saying I need that input?

Detective: No, but like I said, once we get you booked through you can call whoever you want.

In March or April 2006, QualServ adopted polices related to computer, e-mail, and Internet use. The policies are quite lengthy, and (among other things) forbid illegal or inappropriate Internet use. Defendant emphasizes that regular monitoring is not a part of the policies, but this is not a complete statement. In this respect, the policies state:

5

>QualServ does not as a policy monitor employees' e-mail or usage of the Internet. However, e-mail messages, associated logs, and/or Internet usage logs may be reviewed should QualServ be required by law, to resolve a dispute, or to investigate alleged contravention of this or any other Company policy. Monitoring procedures shall follow the principle of privacy and data protection in accordance with applicable laws and regulations.

## II. DISCUSSION

### A. The "Searches" and "Seizures" by QualServ Employees

Defendant argues that some of QualServ's actions are attributable to law enforcement and are therefore subject to constitutional scrutiny. In this regard, Defendant does not seem to be addressing Cox's examination of Defendant's computer, the discovery of photographs on the hard drive, or the copying of the hard drive on a partitioned section of Cox's hard drive: these actions were all taken in the ordinary course of Cox's duties and do not seem to be the focus of Defendant's argument. Instead, Defendant focuses on events *after* Cox discovered the photographs; namely, his creation of two CDs and the eventual retrieval of Defendant's hard drive.

The Court concludes QualServ's actions are not subject to Fourth Amendment scrutiny. "A search by a private citizen is not subject to the strictures of the Fourth Amendment unless the private citizen is acting as a government agent. Chief among these are whether the government had knowledge of and acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement agents or instead acted to further his own purposes; and whether the citizen acted at the government's request." United States v. Smith, 383 F.3d 700, 705 (8th Cir. 2004). The Court finds law enforcement did not know about the creation of the CDs or the retrieval of the hard drive until after those actions were taken. Therefore, the private actions of QualServ were not taken at the behest of, or with the knowledge or acquiescence of, law enforcement.

Defendant insists QualServ acted with the intent to assist law enforcement, and this is true to some extent – but QualServ had legitimate interests of its own, including the interest of addressing the hard drive that was not working.  Having found the hard drive was not working properly, the Court must also conclude the replacement of that hard drive was motivated, at least in part, by legitimate private purposes.  Moreover, the computer belonged to QualServ, and QualServ has an interest in insuring that it's computers do not contain illegal pictures.  Cf. Illinois v. Andreas, 463 U.S. 765, 769 n.1 (1983) (holding that private carriers have an interest in insuring they do not transport contraband).  In any event, and perhaps most critically, a private citizen's intent to aid law enforcement, alone, will not transform the citizen into a government agent.  Smith, 383 F.3d at 705.  "[I]t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals."  Coolidge v. New Hampshire, 403 U.S. 443, 488 (1971).

Even if the Fourth Amendment applied to QualServ's actions, it would apply only if Defendant had a legitimate expectation of privacy in his computer's contents.  The Court agrees with the Report's conclusion that, as between Defendant and QualServ, Defendant had no such legitimate expectation.  Defendant relies heavily on the Second Circuit's decision in Leventhal v. Knapek, 266 F.3d 64 (2d Cir. 2001), for support, but the controlling law from the Eighth Circuit dictates that Defendant did not have a legitimate expectation of privacy in his computer.  See United States v. Thorn, 375 F.3d 679, 683-84 (8th Cir. 2004), *reinstated on remand*, 413 F.3d 820 (8th Cir. 2005).  Defendant's insinuation that QualServ was required to obtain a warrant when it searched its own computers for violations of law or company policies is rejected.[2]

---

[2]It should be noted that both Leventhal and Thorn involved government employees, which is significant because government employers must abide by the Constitution.  Private employees do not, so Defendant had less of an expectation of privacy than the defendants in Leventhal and Thorn.

7

## B. Breadth of the Warrant

Cox found potential child pornography in only two directories on Defendant's hard drive. Defendant contends the warrant was overbroad because it authorized a search of the entire computer. The Court disagrees. Certainly, the warrant could have been limited to the two directories in question; however, a computer's hard drive is similar to a filing cabinet. When authorized by a warrant to search for files, law enforcement is not limited to a single folder or drawer: it is authorized to search anywhere the item might be expected to be found. For instance, if law enforcement is authorized to search a file cabinet for records related to "the ACME Deal," the warrant need not be limited to the "A's" – the search of the entire cabinet is permissible. Similarly, the fact that illegal pictures were found in two directories of a hard drive justified a search of the entire hard drive. It may not have justified a search of other hard drives, or of drawers, or of other locations, but limiting the scope to the hard drive in question was reasonable. Moreover, in addition to pictures, there was probable cause to believe other portions of the computer would provide evidence related to the pictures that were found (such as where they came from or how they came to be on the computer).[3]

## C. Detention

Defendant does not present any arguments that were not adequately addressed by the Report. Further discussion is not required.

---

[3] Even if the scope of the warrant was overbroad, the evidence need not be suppressed because there is no indication the officers failed to act in good faith reliance on the warrant. See, e.g., United States v. Ervasti, 201 F.3d 1029, 1038-39 (8th Cir. 2000) (indicating the good-faith exception to the exclusionary rule applies to overbreadth challenges).

In light of these holdings, the Court has not considered possible application of the inevitable discovery doctrine (which might be triggered by virtue of the duplicate of Defendant's hard drive residing on Cox's computer).

### D. Invocation of Counsel

"[O]nly a clear and unequivocal request for the assistance of counsel may serve to invoke a defendant's right." United States v. Kelly, 329 F.3d 624, 630 (8th Cir. 2003). In Kelly, the defendant's question asking if the officers knew any good lawyers was deemed not to be a clear and unequivocal request. Id. at 629-30. A defendant stating "Maybe I should talk to a lawyer" has been held to not have requested counsel. Davis v. United States, 512 U.S. 452, 462 (1994). Defendant's statements are also insufficient. The first two are attempts to place himself in a good light by virtue of his decision not to ask for counsel. The third comment cannot easily be summarized but it is not a request for a lawyer. The last one is practically the same as the statement found insufficient in Davis.[4] None of these statements is a clear, unequivocal request for counsel.

### III. CONCLUSION

For the reasons stated herein and in the Superceding Report and Recommendation, Defendant's Motions to Suppress (Doc. # 13 and Doc. # 14) are denied.
IT IS SO ORDERED.

                              /s/ Ortrie D. Smith
                              ORTRIE D. SMITH, JUDGE
DATE: August 18, 2008        UNITED STATES DISTRICT COURT

---

[4] Of course, even if Defendant invoked his right to counsel, the only statements that could be suppressed would be those made *after* any such invocation. This is particularly significant with respect to the last two alleged invocations, because it does not appear Defendant said anything thereafter that would be of use to the Government.